# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. _____

BTL INDUSTRIES, INC.,

          Plaintiff,

LEXTER MICROELECTRONIC
ENGINEERING SYSTEMS S.L.,
WELLFIT DISTRIBUTORS, INC., WE202
EMS STUDIO – PEMBROKE LLC,
ELIZABETH M. CASTILLO, CARMELA
CASTILLO, and JUAN A. CASTILLO-
PLAZA,

          Defendants.

_____/



## COMPLAINT

Plaintiff BTL Industries, Inc. ("**Plaintiff**" or "**BTL**"), by its attorneys, for its Complaint against Lexter Microelectronic Engineering Systems S.L. ("**Wonder**"), WellFit Distributors, Inc. ("**WellFit**"), We202 EMS Studio – Pembroke LLC ("**We202**"), Elizabeth M. Castillo, Carmela Castillo, and Juan A. Castillo-Plaza (collectively, "**Defendants**"), alleges as follows:

## NATURE OF THIS ACTION

1.    This is a civil action by BTL arising out of Defendants' patent infringement in violation of the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

2.    BTL and its affiliates pioneered the application of high-intensity, focused electromagnetic technology in non-invasive aesthetic body-contouring devices. In June 2018, BTL launched the ground-breaking EMSCULPT® aesthetic body-contouring device that uses this technology in the United States, after the device was cleared by the U.S. Food and Drug Administration (FDA). BTL and its affiliates protected the EMSCULPT® device—and the

1

technology used in the device—with numerous patents and federally registered trademarks and copyrights.

3.      BTL and its affiliates continue to pioneer the application of high-intensity, focused electromagnetic technology in non-invasive aesthetic body-contouring devices. In September 2022, BTL launched EMFACE® aesthetic facial-contouring device. Like the device, BTL protects the EMFACE® device—and the technology used in the device—with numerous patents and federally registered trademarks.

4.      Defendants promote and sell devices and services in the United States using certain non-invasive face contouring devices that they call "WonderFace." On information and belief, Defendants have and continue to infringe BTL's patents directed to face-contouring devices and methods by offering, selling, and performing facial-contouring services using these devices.

5.      Defendants' infringing and fraudulent conduct not only irreparably harms BTL and the goodwill associated with its brand but may also pose potentially serious health and safety consequences to the public as, on information and belief, Defendants' device is not FDA cleared.

6.      BTL is thus forced to file this action to combat Defendants' unauthorized use of its patents, as well as to protect unknowing consumers from purchasing face-contouring services performed by devices that are not FDA cleared.

7.      Defendants unfair competition and willful and continuing patent infringement should be enjoined permanently to curb the harm to BTL's reputation and the relevant segment of the public at large. BTL has been, and continues to be, irreparably damaged as a result of Defendants' willful actions and seeks injunctive and monetary relief.

## **PARTIES**

8.      BTL is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 362 Elm Street, Marlborough, Massachusetts 01752.

9.      On information and belief, Wonder is a "sociedad limitada" (i.e., limited liability company) organized and existing under the laws of Spain, with its principal place of business at Chile 4, offices 43-44, 28290 Las Rozas de Madrid, Spain, and its registered address at Larrano 7, San Lorenzo de El Escorial 28200, Madrid, Spain.

10.     On information and belief, WellFit is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 11900 Biscayne Boulevard, Suite 105, Miami, Florida 33181.

11.     On information and belief, We202 is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business at 17886 Northwest 2nd Street, Pembroke Pines, Florida, 33029.

12.     On information and belief, Elizabeth M. Castillo is an individual and registered agent, director, principal, and/or owner of WellFit and We202, who resides in this District.

13.     On information and belief, Carmela Castillo is an individual and registered agent, director, principal, and/or owner of WellFit, who resides in this District.

14.     On information and belief, Juan A. Castillo-Plaza is an individual and registered agent, director, principal, and/or owner of WellFit and We202, who resides in this District.

**JURISDICTION AND VENUE**

15.     This Court has subject-matter jurisdiction over BTL's claims arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq.* and the Lanham Act, 15 U.S.C. §§ 1051, 1121, pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a)–(b).

16.     This Court has personal jurisdiction over Defendants because they or their employees have committed acts of patent infringement under 35 U.S.C. § 271(a), (b), or (c), and are subject to this Court's jurisdiction under 28 U.S.C. § 1400(b).

17.     This Court has personal jurisdiction over Wonder based on Wonder's patent infringement via marketing and selling the Accused Devices to consumers in this District, and the use of instrumentalities in the District to promote and sell Accused Devices, including through use of local distributors within the District, such as Defendants WellFit and We202.

18.     This Court has personal jurisdiction over WellFit because, on information and belief, it is a Florida corporation and has its principal place of business in this District.

19.     This Court has personal jurisdiction over We202 because, on information and belief, it is a Florida limited liability company and has its principal place of business in this District.

20.     This Court has personal jurisdiction over Defendant Elizabeth M. Castillo because, on information and belief, Elizabeth Castillo is an owner and moving, conscious force behind Defendant WellFit and We202's actions and is a resident of this District.

21.     This Court has personal jurisdiction over Defendant Carmela Castillo because, on information and belief, Carmela Castillo is an owner and moving, conscious force behind Defendant WellFit's actions and is a resident of this District.

22.     This Court has personal jurisdiction over Defendant Juan A. Castillo-Plaza because, on information and belief, Juan A. Castillo-Plaza is an owner and moving, conscious force behind Defendant WellFit and We202's actions and is a resident of this District.

23.     This Court has supplemental jurisdiction over BTL's claims arising under the laws of Florida, pursuant to 28 U.S.C. § 1367(a), because BTL's state-law claims are so related to BTL's federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

24.     Further, the acts complained of herein occurred in Florida.

25.     Similarly, the exercise of personal jurisdiction over Defendants comports with the due process requirements of the United States Constitution because:

(a)     Defendants have purposefully established "minimum contacts" with the State of Florida and this District; and

(b)     the exercise of personal jurisdiction over Defendants will not offend the traditional notions of fair play and substantial justice.

26.     Therefore, this Court has specific and general jurisdiction over Defendants.

27.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 at least because Defendants are residents of and have their principal place of business in this District and are subject to personal jurisdiction in this District.

## BACKGROUND

28.     BTL specializes in the innovation, development, and sale of equipment and treatments for the aesthetics industry in the United States. BTL and its affiliates developed proprietary technology that uses high-intensity electromagnetic stimulation to tone and strengthen muscles in targeted areas. BTL applied its technology to develop a series of new and innovative FDA-cleared devices and developed protocols for using the technology for aesthetic therapies. BTL denotes its products and services that feature this technology with its HIFEM® brand and other trademarks.

29.     The first such device that BTL developed was the EMSCULPT® device, a standalone, non-invasive, FDA-cleared, body-contouring device. *See* **Exhibit A** (BTL Press Release).

30.     In September 2022, BTL released the EMFACE® device (shown below), a standard non-invasive, aesthetic facial-contouring device. *See* **Exhibit B** (BTL EMFACE Press Release). BTL's patent-protected EMFACE® device applies a combination of synchronized radiofrequency

and high-intensity facial electromagnetic stimulation (HIFES®). Synchronized radiofrequency heats the dermis to stimulate collagen and elastin production, while HIFES® selectively contracts facial muscles.



31.   BTL has developed specifically configured EMFACE® flexible applicators, tailoring each type of applicator to a specific target area. https://bodybybtl.com/solutions/emface/.



32.     The EMFACE® device uses innovative and patent-protected protocols for aesthetic therapies. BTL's proprietary protocols create heat and repetitive muscle contractions that result in a non-invasive method of toning muscle and face sculpting. https://bodybybtl.com/solutions/emface/.

33.     In March 2022, BTL received clearance from the FDA for its EMFACE® device and began to sell the device in the United States for the improvement of facial toning and reduction of wrinkles. *See id.*

34.     BTL markets and distributes its non-invasive aesthetic facial-contouring EMFACE® device to healthcare professionals, and BTL licenses these healthcare professionals to provide the associated treatment services administered via authentic EMFACE® devices that incorporate its proprietary technology, muscle toning protocols, and flexible applicators in the United States.

35.     BTL's market success and superior performance are by-products of its technological innovations over the past several decades. BTL continues to implement these innovations today. BTL has protected its investment into its innovations and its brand with patents and trademarks. BTL lists the patents that cover its products, including EMSCULPT®, on its website at www.btlnet.com/patents.

### A.     The Asserted Patents

36.     On June 20, 2023, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 11,679,255 (the "**'255 Patent**"), entitled "Device and Method for Unattended Treatment of a Patient" to BTL Medical Technologies A.S. A true and correct copy of the '255 Patent is attached hereto as **Exhibit C**. The '255 Patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '255 Patent, including equitable relief and damages.

37.     On January 23, 2024, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 11,878,167 (the "**'167 Patent**"), entitled "Device and Method for Unattended Treatment of a Patient" to BTL Medical Technologies A.S. A true and correct copy of the '167 Patent is attached hereto as **Exhibit D**. The '167 Patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '167 Patent, including equitable relief and damages.

### B.     Defendants' Unlawful Conduct

38.     On information and belief, Defendant WellFit has since at least June 13, 2024, Defendant We202 has since at least July 28, 2024, and Defendant Wonder has since at least November 29, 2023, advertised facial-contouring devices, such as the "WonderFace" (the "Accused    Devices").    *See*,    https://www.wellfitdistributors.com/facial-muscle-toning/,

https://www.instagram.com/wellfitdistributors/, https://www.instagram.com/we202ems/, and https://web.archive.org/web/20231129124834/https://www.wonder.clinic/face.

39.    On information and belief, Defendants' activities are ongoing, despite attorneys for BTL informing Defendants that their activities violate BTL's rights.

40.    On information and belief, the Accused Devices implement the same or substantially the same technology as the Asserted Patents.

41.    On information and belief, the Accused Devices include or perform each and every limitation of at least one claim of the Asserted Patents, either literally or under the doctrine of equivalents. By offering services using, making, offering to sell, selling, and/or importing into the United States the Accused Devices, Defendants have directly infringed, and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the Asserted Patents under 35 U.S.C. § 271(a).

42.    On information and belief, Defendant WellFit has been aware of the Asserted Patents since at least December 13, 2024, when BTL informed Defendant WellFit via certified mail return receipt of their infringement of the Asserted Patents. On January 24, 2025, BTL attempted to inform Defendant We202 of the Asserted Patents by sending a letter via certified mail return receipt to 17886 NW 2nd Street, Pembroke Pines, FL 33029 (i.e., the principal place of business as listed on Florida's Secretary of State 2024 Annual Filing Report for We202), but the letter was returned as undeliverable. On February 27, 2025, BTL attempted to follow-up and inform Defendant We202 of the Asserted Patents by sending a letter via certified mail return receipt to 17900 NW 5th Street, Suite 203B, Miami, FL 33181 (i.e., the registered agent's address as listed on Florida's Secretary of State 2024 Annual Filing Report for We202), but the letter was returned as undeliverable. Additionally, BTL's "Patent Labeling" webpage

(https://www.btlnet.com/patents) also lists the Asserted Patents and identifies it as covering the EMSCULPT® and EMFACE® devices.

43.     On information and belief, Defendants have been aware of BTL's specific infringement allegations regarding the Asserted Patents since at least when BTL served a copy of the complaint in this matter.

44.     On information and belief, Defendants actively encourage, promote, distribute, provide instruction for, and support the use of the Accused Devices by their customers in manner that directly infringes, either literally or under the doctrine of equivalents, one or more claims of the Asserted Patents under 35 U.S.C. § 271(b), knowing and intending that Defendants' customers will commit acts in such a manner as to directly infringe the Asserted Patents.

45.     On information and belief, Defendants WellFit, We202, Elizabeth Castillo, Carmela Castillo, and Juan Castillo-Plaza are United States distributors for Wonder, a Spanish company and manufacturer, that provides the Accused Devices. https://www.wonder.clinic/face. A true and accurate copy of the Wonder brochure advertising the Accused Devices is attached hereto as **Exhibit E**.

46.     Wonder has purposefully directed the Accused Devices to this District by contracting, working with, and/or associating with WellFit to import, market, and sell the Accused Devices in this District, and the devices have in fact been offered for sale and used on patients in this District, giving rise to Plaintiff's claims.

47.     Specifically, the images below are representative of Defendants' infringing conduct:



(https://www.wellfitdistributors.com/facial-ems-future-antiaging-treatments/;

accessed May 13, 2025)

WonderFace completely changes the game in the field of facial beauty treatments.

(https://www.wellfitdistributors.com/facial-muscle-toning/; accessed May 13, 2025)



(https://www.instagram.com/p/DCwpIw7sqA2/?img_index=2; accessed May 13, 2025)

48.     On information and belief, Elizabeth Castillo, Carmela Castillo, and Juan Castillo-Plaza are the moving, conscious, and active forces behind WellFit and We202's infringing conduct. For example, on information and belief, Elizabeth Castillo, Carmela Castillo, and Juan Castillo-Plaza are the owners and/or directors of WellFit and We202. For example, the "2025 Florida Profit Corporation Annual Report," filed with Florida's Secretary of State, lists Elizabeth Castillo, Carmela Castillo, and Juan Castillo-Plaza as "Officer[s]/Director[s]." A true and correct copy of the "2025 Florida Profit Corporation Annual Report" is attached hereto as **Exhibit F**.

49.     Elizabeth Castillo, Carmela Castillo, and Juan Castillo-Plaza, as the owners and directors of WellFit and We202, are and have been the individuals possessing decision-making authority over the content of WellFit and We202's technical, information, and promotional materials for the Accused Device.

50.     Elizabeth Castillo, Carmela Castillo, and Juan Castillo-Plaza, as the authorized members of WellFit and We202, are and have been the individuals possessing decision-making

authority to enter into wholesale purchase agreements on behalf of WellFit and We202. Thus, on information and belief, Elizabeth Castillo, Carmela Castillo, and Juan Castillo-Plaza have and continue to, on WellFit and We202's behalf, enter into wholesale purchase agreements with third parties for the importation of the Accused Devices into the United States.

51.     On information and belief, Elizabeth Castillo, Carmela Castillo, and Juan Castillo-Plaza have and continue to willfully and maliciously serve as the moving, conscious, and active forces behind WellFit and We202's infringing conduct—not least because Elizabeth Castillo, Carmela Castillo, and Juan Castillo-Plaza have had constructive knowledge of BTL's intellectual property at least since December 13, 2024, when counsel for BTL informed Defendant WellFit via certified mail return receipt of their potential infringement of BTL's intellectual property.

52.     On information and belief, the Accused Devices are not authentic BTL devices. On information and belief, Defendants' Accused Devices include a flexible pad comprising an electrode that is configured to be attached to a patient's body part—such as the face, neck, or submentum—during treatment. On information and belief, the electrode is configured to apply radiofrequency energy to the patient's skin, resulting in radiofrequency heating of the treatment area. On information and belief, the electrode is further configured to deliver pulsed electric currents with a pulse duration between 0.5 microseconds and 500 milliseconds, causing muscle contractions within the treated body part. On information and belief, the devices include a control unit comprising a central processing unit that regulates both the radiofrequency energy and the pulsed electric current during use.

53.     As detailed below, on information and belief, Defendants' Accused Devices incorporate a treatment pad that works in concert with two separate power sources—a first generator that emits electromagnetic energy and a second generator that supplies electric current—

both governed by an integrated control unit. On information and belief, the pad spans roughly 0.1 cm² to 150 cm² and is formed from a flexible substrate whose underside is oriented toward the patient during use. A conductive lead traverses the pad and couples an underside-mounted electrode, having a surface area of about 1 cm² to 25 cm², to each generator. When the pad is affixed to the targeted body part, the electrode is believed to deliver radiofrequency or other electromagnetic energy that heats the overlying skin while simultaneously channeling electric current deep enough to trigger involuntary muscle contractions in the same region.

54.     On information and belief, the Accused Devices are not FDA-cleared.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 11,679,255**

55.     BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

56.     The '255 Patent is directed towards a device for treating a patient using radiofrequency energy and pulsed electric current. Exemplary claim 16 of the '255 Patent recites:

A device for treating a patient by radiofrequency energy and a pulsed electric current, the device comprising:

a flexible pad configured to be attached to a body part of a patient, the flexible pad comprising:

a flexible substrate comprising an underside configured to face the body part during a treatment;

an electrode coupled to the underside of the flexible substrate; and

an adhesive coupled to the underside of the flexible substrate and to the electrode,

wherein the electrode is configured to be in contact with the body part via the adhesive;

wherein the electrode is configured to apply radiofrequency energy to the body part to cause heating of the body part, and

wherein the electrode is configured to apply pulsed electric current to the body part to cause a muscle contraction of a muscle within the body part; and

a control unit configured to control the radiofrequency energy and the pulsed electric current to provide the heating and the muscle contraction of the body part during the treatment,

wherein the body part comprises one of a face, a neck, or a submentum.

57.     The Accused Devices include or perform each and every limitation of at least claim 16 of the '255 Patent, either literally or under the doctrine of equivalents.

58.     Defendants have and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 16 of the '255 Patent by making, using, offering to sell, selling, or importing the Accused Devices in the United States.

59.     Defendants have induced infringement and continue to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 16 of the '255 Patent, by encouraging, promoting, and instructing customers to use the Accused Devices in a manner that directly infringes at least claim 16 of the '255 Patent.

60.     On information and belief, the Accused Devices include the preamble of claim 16 of the '255 Patent, which recites "[a] device for treating a patient by radiofrequency energy and a pulsed electric current." The landing pages for the Accused Devices represent that the devices treat patients by radiofrequency energy and pulsed electric current. *See, e.g.*,

https://www.wellfitdistributors.com/facial-muscle-toning/ ("It is the new treatment for facial sagging and lack of skin firmness. It simultaneously treats the skin and facial muscles thanks to the unique combination of synchronized Radiofrequency (RF) and Neuromuscular technologies. In this way, it reshapes and tightens the skin by heating the dermis and increasing the levels of collagen and elastin fibers."). Additionally, Wonder describes the Accused Devices of using "synchronized neuromuscular + radiofrequency."

**First and Only: Synchronized Neuromuscular + Radiofrequency**

**Neuromuscular Emissions:** Electrical stimulation of facial muscles strengthens the musculature and improves tone while increasing blood circulation.

**Bipolar Radiofrequency:** An effective method to stimulate collagen and elastin production, promoting firmer skin and reducing the appearance of wrinkles.

(https://www.wonder.clinic/face; accessed on May 16, 2025)

61. On information and belief, the Accused Devices include the claimed element "a flexible pad configured to be attached to a body part of a patient." For example, the following screenshot taken from Defendants' website (https://www.wellfitdistributors.com/facial-muscle-toning/) shows the Accused Device's pads flexing to the contours of the patient's face.



(https://www.wellfitdistributors.com/facial-muscle-toning/; accessed May 12, 2025)

Additionally, the video posted on Defendants' Instagram account (https://www.instagram.com/p/DEcoMZytOpq/) shows an individual adhering one of the Accused Devices' flexible pads to the patient's face.



(https://www.instagram.com/p/DEcoMZytOpq/; last accessed May 16, 2025)

62.     On information and belief, the Accused Devices include the claimed element "a flexible substrate comprising an underside configured to face the body part during a treatment." As seen when removing the pad from a patient's face, the Accused Devices' pads are flexing to the contours of the patient's face and include an underside facing the patient's face.



(https://www.instagram.com/p/DEcoMZytOpq/; accessed on May 12, 2025)



(https://www.instagram.com/p/DDr-XZAKtBH/?hl=en; accessed on May 13, 2025)

63.     On information and belief, the Accused Devices include the claimed element "an electrode coupled to the underside of the flexible substrate." On information and belief, the Accused Devices use pulsed electric current and flexible substrates.[1] On information and belief, the pulsed electric current requires an electrode to be produced. On information and belief, Defendants' Instagram post depicts the coupling to the electrodes within the Accused Devices' flexible pads.

---

[1] On information and belief, a reasonable opportunity for further investigation and discovery will show that the Accused Devices includes an electrode coupled to the underside of the flexible substrate.



(https://www.instagram.com/p/DEcoMZytOpq/; accessed on May 12, 2025)



(https://www.instagram.com/p/DEcoMZytOpq/; accessed on May 12, 2025)

Additionally, Wonder describes the Accused Devices as having "[r]eusuable [e]lectrodes."

**Reusable Electrodes:** We advocate for sustainability, offering durable electrodes for multiple sessions.

(https://www.wonder.clinic/face; accessed on May 16, 2025)

64.     On information and belief, the Accused Devices include the claimed element "an adhesive coupled to the underside of the flexible substrate and to the electrode." As shown in Defendants' Instagram posts above, the flexible pads are adhered to the patient's face with, on information and belief, an adhesive.[2] Furthermore, as can be seen on the underside of the pad, the Accused Devices include electrodes. On information and belief, the Accused Devices include an adhesive coupled to the underside of the flexible substrate.

65.     On information and belief, the Accused Devices include the claimed element "wherein the electrode is configured to be in contact with the body part via the adhesive." On information and belief, the Accused Devices use pulsed electric current, and that pulsed electric current emanates from electrodes included in the flexible pads. As shown in Defendants' Instagram posts, the electrode is located on the underside of the flexible substrate, which is in contact with the patient's body in order to operate.

---

[2] On information and belief, a reasonable opportunity for further investigation and discovery will show that the Accused Devices includes an electrode coupled to the underside of the flexible substrate.



([https://www.instagram.com/p/DDcAy0_x470/](https://www.instagram.com/p/DDcAy0_x470/); accessed on May 12, 2025)



([https://www.instagram.com/p/DDXDTXUIV0Y/?hl=en](https://www.instagram.com/p/DDXDTXUIV0Y/?hl=en); accessed May 13, 2025)



(https://www.instagram.com/p/DEcoMZytOpq/; accessed on May 12, 2025)

66.     On information and belief, the Accused Devices include the claimed element "wherein the electrode is configured to apply radiofrequency energy to the body part to cause heating of the body part." For example, Defendants' website describes the Accused Devices as treating patients using radiofrequency energy, and the Accused Devices include electrodes.





(https://www.wellfitdistributors.com/facial-muscle-toning/; accessed May 12, 2025)

**Reusable Electrodes:** We advocate for sustainability, offering durable electrodes for multiple sessions.

(https://www.wonder.clinic/face; accessed on May 16, 2025)

67.    On information and belief, the Accused Devices include the claimed element "wherein the electrode is configured to apply pulsed electric current to the body part to cause a muscle contraction of a muscle within the body part." On information and belief, the Accused Devices treat patients using pulsed electric current. On information and belief, these pulsed electric currents produced by the Accused Devices cause muscle contractions. For example, a video posted on Defendants' Instagram Page (https://www.instagram.com/p/DEcoMZytOpq/) shows patients' facial muscles contracting upon being subjected to the pulsed electric currents of the Accused Devices. Additionally, Defendants' Instagram posts described the Accused Devices as able to

deliver "1,500 contractions in just 25 minutes."



(https://www.instagram.com/p/C587BBTNhjL/; accessed on May 16, 2025)

68.     On information and belief, the Accused Devices include the claimed element "a control unit configured to control the radiofrequency energy and the pulsed electric current to provide the heating and the muscle contraction of the body part during the treatment." In videos posted on Defendants' Instagram Page (https://www.instagram.com/p/DEcoMZytOpq/; https://www.instagram.com/p/C587BBTNhjL/), operators are shown interacting with a tablet to select and modify the Accused Devices' radiofrequency energy and pulsed electric current, demonstrating that the Accused Devices include the claimed "control unit."



([https://www.instagram.com/p/C587BBTNhjL/](https://www.instagram.com/p/C587BBTNhjL/); accessed on May 16, 2025)



([https://www.wellfitdistributors.com/facial-muscle-toning/](https://www.wellfitdistributors.com/facial-muscle-toning/); accessed on May 12, 2025)

69. On information and belief, the Accused Devices include the claimed element "wherein the body part comprises one of a face, a neck, or a submentum." As shown by Defendants' social media posts, the Accused Devices are intended to treat various areas of a patient's face, neck, and submentum. For example, the below screenshot from Defendants'

Instagram Page shows the Accused Devices' flexible pads attached to a patient's face and submentum.



([https://www.instagram.com/p/DDXDTXUIV0Y/?hl=en](https://www.instagram.com/p/DDXDTXUIV0Y/?hl=en); accessed May 13, 2025)

70.     Defendants' direct infringement of the '255 Patent has been, and continues to be, willful. On information and belief, Defendants have been aware of the '255 Patent before the filing of this Complaint and have infringed the '255 Patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

71.     Defendants' direct infringement of the '255 Patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

72.     BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '255 Patent.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 11,878,167

73.     BTL repeats and re-alleges paragraphs 1–54 as if fully set forth herein.

74.     The '167 Patent is directed towards a device for treating a patient using radiofrequency energy and pulsed electric current. Exemplary claim 1 of the '167 Patent recites:

A device for a treatment of a patient, comprising:

a first generator configured to generate an electromagnetic energy;

a second generator configured to generate an electric current;

a pad having a surface area in a range of $0.1 \text{ cm}^2$ to $150 \text{ cm}^2$ and configured to be attached to a body part of the patient, the pad comprising:

a substrate comprising an underside configured to face the patient during the treatment;

a conductive lead; and

an electrode having a surface area in a range of 1 cm2 to 25 cm2, coupled to the underside of the substrate, and coupled to the first generator and second generator via the conductive lead; and

a control unit configured to control the first generator and the second generator,

wherein the electrode is configured to be coupled with the body part during the treatment, and

wherein the electrode is configured to provide the electromagnetic energy to the body part, thereby causing heating of skin of the body part, and is configured to provide the electric current to the body part, thereby causing contractions of a muscle within the body part.

75.     The Accused Devices include or perform each and every limitation of at least claim 1 of the '167 Patent, either literally or under the doctrine of equivalents.

76.     Defendants have and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '167 Patent by making, using, offering to sell, selling, or importing the Accused Devices in the United States.

77.     Defendants have induced infringement and continue to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '167 Patent, by encouraging, promoting, and instructing customers to use the Accused Devices in a manner that directly infringes at least claim 1 of the '167 Patent.

78.     On information and belief, the Accused Devices include the preamble of claim 1 of the '167 Patent, which recites "[a] device for a treatment of a patient." The landing pages for the Accused Devices represent that the devices treat patients by radiofrequency energy and pulsed electric current. *See, e.g.*, https://www.wellfitdistributors.com/facial-muscle-toning/ ("It is the new treatment for facial sagging and lack of skin firmness. It simultaneously treats the skin and facial muscles thanks to the unique combination of synchronized Radiofrequency (RF) and Neuromuscular technologies. In this way, it reshapes and tightens the skin by heating the dermis and increasing the levels of collagen and elastin fibers."). Additionally, Wonder describes the Accused Devices of using "synchronized neuromuscular + radiofrequency."



**First and Only: Synchronized Neuromuscular + Radiofrequency**

**Neuromuscular Emissions:** Electrical stimulation of facial muscles strengthens the musculature and improves tone while increasing blood circulation.

**Bipolar Radiofrequency:** An effective method to stimulate collagen and elastin production, promoting firmer skin and reducing the appearance of wrinkles.

(https://www.wonder.clinic/face; accessed on May 16, 2025)

79.     On information and belief, the Accused Devices include the claimed element "a first generator configured to generate an electromagnetic energy." On information and belief, the Accused Devices include a "first generator" which generates electromagnetic energy. For example, Defendants' website describes the Accused Devices as treating patients using radiofrequency energy. This radiofrequency "generates heat in the deepest layers of the skin,which (sic) promotes the production of collagen andelastin (sic)."

### Never-Before-Seen Technology

The combination of Neuromuscular Technologyand Synchronized Radiofrequency in facialtreatments with WonderFace offers you severalbenefits:

**Deep Facial Rejuvenation:** Radiofrequencygenerates heat in the deepest layers of the skin,which promotes the production of collagen andelastin.



(https://www.wellfitdistributors.com/facial-muscle-toning/; accessed May 12, 2025)

80.     On information and belief, the Accused Devices include the claimed element "a second generator configured to generate an electric current." On information and belief, the Accused Devices include a "second generator" which treats patients using pulsed electric current. Wonder describes the Accused Devices of using "synchronized neuromuscular + radiofrequency."

> **First and Only: Synchronized Neuromuscular + Radiofrequency**
>
> **Neuromuscular Emissions:** Electrical stimulation of facial muscles strengthens the musculature and improves tone while increasing blood circulation.
>
> **Bipolar Radiofrequency:** An effective method to stimulate collagen and elastin production, promoting firmer skin and reducing the appearance of wrinkles.

(https://www.wonder.clinic/face; accessed on May 16, 2025)

Additionally, a video posted on the Defendants' Instagram Page (https://www.instagram.com/p/DEcoMZytOpq/) shows patients' facial muscles contracting upon being subjected to the pulsed electric currents of the Accused Devices. Furthermore, Defendants' Instagram posts described the Accused Devices as able to deliver "1,500 contractions in just 25 minutes."



(https://www.instagram.com/p/C587BBTNhjL/; accessed on May 16, 2025)

81.     On information and belief, the Accused Devices include the claimed element "a pad having a surface area in a range of 0.1 cm$^2$ to 150 cm$^2$ and configured to be attached to a body part of the patient." A reasonable opportunity for further investigation and discovery will show the pads have "a surface area in a range of 0.1 cm$^2$ to 150 cm$^2$." As can be seen by videos posted on YouTube, the Accused Devices can be seen as configured to attach to a patient's body.





(https://www.youtube.com/watch?v=rS1g9F-hTpU; accessed June 4, 2025)

82.     On information and belief, the Accused Devices include the claimed element "the pad comprising: a substrate comprising an underside configured to face the patient during treatment." For example, the following screenshots taken from Wonder's YouTube channel (https://www.youtube.com/watch?v=rS1g9F-hTpU) show the Accused Devices' pads featuring an

underside and a top side. The video further shows the pads as flexible, as shown when the pad is being placed/removed from the patient.







(https://www.youtube.com/watch?v=rS1g9F-hTpU; accessed June 4, 2025)

Additionally, Defendants' Instagram Page shows the Accused Devices' pads flexing to the shape of the patient's face, as well as the underside of the pad being configured to face the patient and the top side configured to face away from the patient.



(https://www.instagram.com/p/DDXDTXUIV0Y/?hl=en; accessed May 13, 2025)



(https://www.instagram.com/p/C587BBTNhjL/; accessed on May 16, 2025)

83.      On information and belief, the Accused Devices include the claimed element "a conductive lead." As may be seen in the following screenshots, the Accused Devices include a conductive lead(s) that couple the device to the electrode(s) in the pad.



36



(https://www.youtube.com/watch?v=rS1g9F-hTpU; accessed June 4, 2025)

84.     On information and belief, the Accused Devices include the claimed element "an electrode having a surface area in a range of 1 cm$^2$ to 25 cm$^2$, coupled to the underside of the substrate, and coupled to the first generator and second generator via the conductive lead." For instance, the following screenshots taken from Wonder's YouTube channel (https://www.youtube.com/watch?v=rS1g9F-hTpU) show the Accused Devices' pads, including an electrode coupled to the underside of the pad, being placed on a patient's treatment area. The pads are then coupled to the first and second generator via the conductive lead(s).









(https://www.youtube.com/watch?v=rS1g9F-hTpU; accessed June 4, 2025)

    Additionally, on information and belief, the electrode is located on the underside of the flexible substrate. As may be seen in Wonder's YouTube video, the electrode is in contact with the treatment area of a patient's body in order to operate. On information and belief, the electrode has a surface area in a range of 1 cm$^2$ to 25 cm$^2$.



(https://www.instagram.com/p/DDcAy0_x470/; accessed on May 12, 2025)



(https://www.instagram.com/p/DDXDTXUIV0Y/?hl=en; accessed May 13, 2025)

On information and belief, a reasonable opportunity for further investigation and discovery will show an electrode having a surface area in a range of 1 cm$^2$ to 25 cm$^2$, coupled to the underside

of the substrate, and coupled to the first generator and second generator via the conductive lead.

85.     On information and belief, the Accused Devices include the claimed element "a control unit configured to control the first generator and the second generator." In videos posted on   Defendants'   Instagram   Page   (https://www.instagram.com/p/DEcoMZytOpq/; https://www.instagram.com/p/C587BBTNhjL/), operators are shown interacting with a tablet to select and modify the Accused Devices' radiofrequency energy and pulsed electric current, demonstrating that the Accused Devices include the claimed "control unit."



(https://www.instagram.com/p/C587BBTNhjL/; accessed on May 16, 2025)



(https://www.wellfitdistributors.com/facial-muscle-toning/; accessed on May 12, 2025)

86.     On information and belief, the Accused Devices include the claimed element "wherein the electrode is configured to be coupled with the body part during treatment." For example, the following screenshots taken from Wonder's YouTube channel (https://www.youtube.com/watch?v=rS1g9F-hTpU) show the Accused Devices' pads, including an electrode coupled to the underside of the pad, being placed on a patient's treatment area.





(https://www.youtube.com/watch?v=rS1g9F-hTpU; accessed June 4, 2025)

Additionally, as seen in Wonder's YouTube video, the electrode is located on the underside of the flexible substrate. Furthermore, the electrode is in contact with the treatment area of a patient's body in order to operate.



(https://www.instagram.com/p/DDcAy0_x470/; accessed on May 12, 2025)



(https://www.instagram.com/p/DDXDTXUIV0Y/?hl=en; accessed May 13, 2025)

On information and belief, "the electrode is configured to be coupled with the body part during the treatment."

87.    On information and belief, the Accused Devices include the claimed element "wherein the electrode is configured to provide the electromagnetic energy to the body part, thereby causing heating of skin of the body part, and is configured to provide the electric current to the body part, thereby causing contractions of a muscle within the body part." The landing pages for the Accused Devices represent that the devices treat patients with radiofrequency energy and pulsed electric current. *See, e.g.*, https://www.wellfitdistributors.com/facial-muscle-toning/ ("It is the new treatment for facial sagging and lack of skin firmness. It simultaneously treats the skin and facial muscles thanks to the unique combination of synchronized Radiofrequency (RF) and Neuromuscular technologies. In this way, it reshapes and tightens the skin by heating the dermis and increasing the levels of collagen and elastin fibers."). Additionally, Wonder describes the Accused Devices of using "synchronized neuromuscular + radiofrequency."

**First and Only: Synchronized Neuromuscular + Radiofrequency**

**Neuromuscular Emissions:** Electrical stimulation of facial muscles strengthens the musculature and improves tone while increasing blood circulation.

**Bipolar Radiofrequency:** An effective method to stimulate collagen and elastin production, promoting firmer skin and reducing the appearance of wrinkles.

(https://www.wonder.clinic/face; accessed on May 16, 2025)

Defendants' website describes the Accused Devices as treating patients using radiofrequency energy. This radiofrequency "generates heat in the deepest layers of the skin, which (sic) promotes the production of collagen and elastin (sic)."

**Never-Before-Seen Technology**

The combination of Neuromuscular Technology and Synchronized Radiofrequency in facial treatments with WonderFace offers you several benefits:

**Deep Facial Rejuvenation:** Radiofrequency generates heat in the deepest layers of the skin, which promotes the production of collagen and elastin.



(https://www.wellfitdistributors.com/facial-muscle-toning/; accessed May 12, 2025)

Additionally, on information and belief, the Accused Devices treat patients using pulsed electric current. On information and belief, these pulsed electric currents produced by the Accused Devices cause muscle contractions. For example, a video posted on the Defendants' Instagram Page (https://www.instagram.com/p/DEcoMZytOpq/) shows patients' facial muscles contracting upon being subjected to the pulsed electric currents of the Accused Devices. Additionally, Defendants' Instagram posts described the Accused Devices as able to deliver "1,500 contractions in just 25 minutes."



([https://www.instagram.com/p/C587BBTNhjL/](https://www.instagram.com/p/C587BBTNhjL/); accessed on May 16, 2025)

88.     Defendants' direct infringement of the '167 Patent has been, and continues to be, willful. On information and belief, Defendants have been aware of the '167 Patent before the filing of this Complaint and have infringed the '167 Patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

89.     Defendants' direct infringement of the '167 Patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

90.     BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '167 Patent.

**PRAYER FOR RELIEF**

WHEREFORE BTL requests entry of judgment against Defendants as follows:

A.     A judgment that Defendants have infringed one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(a)–(c);

B.      An award of damages not less than $125,000 for infringement of the Asserted Patents, with said damages to be trebled because of the intentional and willful nature of Defendants' infringement, as provided by 35 U.S.C. § 284;

C.      A judgment that Defendants have willfully infringed one or more claims of the Asserted Patents;

D.      A determination that this case is "exceptional" under 35 U.S.C. § 285 and an award of BTL's reasonable attorneys' fees;

E.      An order permanently enjoining Defendants, their officers, directors, employees, agents, and all persons acting in concert with them, from infringing the Asserted Patents;

F.      An award of damages against Defendants as a result of their wrongful acts against BTL in an amount to be proved at trial;

G.      An award of any and all of Defendants' profits arising from the foregoing acts;

H.      An award of pre-and post-judgment interest of any monetary damages at the highest rate allowed by law;

I.      An award of BTL's costs and expenses in this action; and

J.      For such other relief as the Court may deem just and proper.

## **JURY DEMAND**

BTL hereby demands a trial by jury on all issues so triable.

Dated: July 29, 2025     Respectfully submitted,

**Richard Guerra**
Richard Guerra (Fla. Bar No. 689521)
Attorney Email address: rguerra@brickellip.com
THE BRICKELL IP GROUP, PLLC
1101 Brickell Avenue, South Tower, Suite 800
Miami FL, 33131
Telephone: (305) 728-8831

and

Seth R. Ogden (*pro hac vice* to be filed)
Attorney Email address: sro@iplawgroup.com
Patterson Intellectual Property Law, P.C.
1600 Division Street, Suite 500
Nashville, TN 37203
Telephone: (615) 242-2400
Facsimile: (615) 242-2221

*Attorneys for Plaintiff BTL Industries, Inc.*